IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RYAN CERNOSEK                                                                                              PLAINTIFF

v.                                          Civil No. 4:19-cv-04132

WARDEN J. WALKER, Miller County
Detention Center ("MCDC"); CAPTAIN
G. ADAMS, MCDC; and SERGEANT
B. GRIFFIE                                                                                                DEFENDANTS

## ORDER

Plaintiff Ryan Cernosek proceeds in this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. The Parties have consented to the jurisdiction of a magistrate judge to conduct all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 17). Currently before the Court is Plaintiff's Motion for Immediate Judgement. (ECF No. 23). Defendants have filed a Response in opposition. (ECF No. 24). The motion is ripe for consideration.

## BACKGROUND

Plaintiff filed his Complaint on October 11, 2019. (ECF No. 1). Construing the Complaint liberally, Plaintiff asserts a condition of confinement claim based on lack of outside recreation and a retaliation claim for being placed in lockdown for informing officials at the Miller County Detention Center he intended to file a lawsuit against them. *Id.* at pp. 4-6. Plaintiff also alleges he was placed in 'solitary confinement…by an officer who no more than a month earlier made PREA[1] statements concerning another inmate going to lockdown violated my safety, my life & my constitutional rights." *Id.* at p. 8.

---
[1] "PREA" stands for Prison Rape Elimination Act.

1

Plaintiff explains prior to being moved to lockdown, he witnessed Defendant Griffie make "the comment that 'He had a really good place for Justy [another inmate] in MAX lockup with Henderson.' And as he is saying this, he is making a derogatory hand motion with his fist busting through his other hand signifying that Henderson would do something orally sexual to Justy once he was rolled up and locked down." *Id.* at p. 7. Plaintiff goes on to state he "filed a request for a PREA hotline and was called to the office by …Cpl. Smith and Col. Walker about it…they both said they would get me number to call but never did…" *Id.* at p. 8.

On February 27, 2020, Plaintiff filed a Notice of Incomplete Discovery. (ECF No. 20). Construing the pleading as a motion to compel, on March 12, 2020, the Court denied the motion explaining to Plaintiff that prior to filing a motion he must first submit discovery requests to Defendants, give them thirty (30) days to respond, and then confer with Defendants and attempt to resolve any dispute.

1. **Plaintiff's Motion**

On March 12, 2020, Plaintiff filed the instant motion. (ECF No. 23). Although Plaintiff entitled the instant motion as one for "Immediate Judgment", the Court construes the motion as one to compel production of discovery and for sanctions against Defendants. First, Plaintiff states Defendants failed to produce grievance #5,121,898 with their first production of documents. *Id.* at p. 1. He goes on to claim Defendants were "trying to hide it from the Plaintiff during discovery, the Defense is merely doing it's best to thwart the justice system and the courts time." *Id.* at p. 2.

Second, Plaintiff argues Defendants have failed to turn "over all Grievances and Request that the Plaintiff submitted while he was incarcerated at the Miller County Detention Center." (ECF No. 23, p. 2). He specifically states he "knows for a fact that I had sent a number of request through the kiosk in our POD to the 1st Shift requesting information about PREA and how to contact

someone in the event that a PREA violation had taken place between the dates of September 5th and 7th of 2019." *Id.*

Third, Plaintiff argues the affidavit of Al Landreth, the Jail Administrator at the Miller County Sheriff's Office, submitted to support Defendants' representation that they have turned over all documents, is "an egregious, mendacious act and one that the courts should not overlook." (ECF No. 23, p. 3). Plaintiff contends Mr. Landreth signed the affidavit stating documents were delivered to Plaintiff before they had been sent out.

Fourth, while it is not completely clear, it appears Plaintiff seeks production of a video where he was taken to lock down and a second video of another inmate where the inmates was moved to lock down and threatened with rape. (ECF No. 23, p. 3). Plaintiff argues these incidents would be considered "use of force" which would have been recorded and saved by the jail. *Id.* Plaintiff goes on to argue, "it is of the opinion of the Plaintiff that there was in fact video and audio recording of the event[s[, and it was deliberately deleted and withheld from the Plaintiff and the courts…" *Id.*

Plaintiff asks the Court "to issue immediate judgement in favor of the Plaintiff, including both punitive and compensatory damages." (ECF No. 23, p. 4). In the alternative, Plaintiff requests the Court to order Defendants to produce the following:

A. All medical request, grievances, general request file, jail file, including any and all correspondence from the Plaintiff to any Jail employee from the dates of September 3rd, 2019 until September 8th, 2019. This way, the Plaintiff will have everything he is entitled to in order to properly prepare for his case. This would include, but not be limited to, the two additional requests the Plaintiff sent to the 1st shift requesting PREA information.
B. Mr. Landreth's definition of 'use of force event' and more specifically, how he believes that being rolled up, put into solitary confinement and being threated [sic] with rape is not considered in his eyes to be a 'use of force event'.
C. Copies of the following sections listed on the table of contents of the Policy and Procedure Manual for the Miller County Detention Center:
   1. Section 7: Auxiliary Law Enforcement Officer Force

3

  2. Section 16: Conduct – Abuse of Position
  3. Section 18: Conduct – Unbecoming an Employee/Officer
  4. Section 31: Disciplinary Procedures
  5. Section 42: Investigations: Internal Affairs
  6. Section 45: Jail and Booking Procedures
  7. Section 55: Police Offenses: Disciplinary
  8. Section 64: Reports: Offense/Incident
  9. Section 80: Civil Procedure
  10. Section 90: Professional Conduct
- D. A complete, uninterrupted and absolute manual/procedure of the Miller County Detention Center's PREA standards, including but not limited to, how to handle rape situations, preventative rape standards, reporting standards Guards involvement in rape incidents, Hotline numbers and statistical studies or numbers of rape incidents in Miller County for the last 20 years.
- E. All video and audio recording from the alleged incident that took place on or around September 3rd, 2019.

(ECF No. 23, pp. 4-5).

**2. Defendants' Response**

On March 19, 2020, Defendants filed their Response in opposition to Plaintiff's motion stating they have been responsive to Plaintiff's discovery requests and have explained why "certain things are not available (if they ever existed)." (ECF No. 24, pp. 1-2). Defendants argue Plaintiff's motion should be denied because: 1) Plaintiff failed to complete a good faith conferral; 2) Plaintiff was provided the information in a timely supplement and there is no prejudice; and 3) Plaintiff does not have standing to request information about another inmate, nor is it proportional to this case. *Id.* at pp. 7-11.

Specifically, Defendants represent to the Court on February 19, 2020, they timely produced the following documents to Plaintiff:

1. SickCall requests, Medical file, eMar File, identified by Bates label Numbers AAC 0001-0079;
2. Plaintiff's Grievance File, identified by Bates Label Numbers AAC 0080-0088;
3. Plaintiff's Jail File, identified by Bates Label Numbers AAC 0089-00104;
4. Plaintiff's General Requests, identified by Bates Label Numbers AAC 0105-0173; and

4

5. 5. The table of contents of the Policy and Procedure Manual, identified by Bates Label Numbers AAC 0174-0177, with instructions should he wish to view a specific policy, that Defendants would make it available; and stated that:
6. 'A representative of the Facility has not located any audio or video relevant to the facts outlined in Plaintiff's Complaint. Should any document, sound recording, photograph, or video footage be found in the future, Defendants will forward to Plaintiff in a supplemental notice. Should Plaintiff be aware of, or suspect any documents, sound recordings, photographs, and/or video footage, if he will describe those items with as much particularity as possible, Defendants will attempt to locate those items.'

After receiving these responses from Defendants, Plaintiff filed a Notice of Incomplete Discovery on February 27, 2020, complaining he did not receive a copy of a grievance number 5,121,898 and he believed there would be video or audio of the "alleged offense." (ECF No. 20). After reviewing this pleading, Defendants state they realized they had not produced grievance number 5,121,898 in their original production, and went back to determine if there was anything else they had failed to produce. Defendants state they prepared a supplemental discovery response to produce the grievance and had the Miller County Detention Center's administrator – Al Landreth – review the supplemental discovery and submit an affidavit supporting the same. (ECF No. 22).

As for the audio and video requested, Defendants state Plaintiff appears to be asking for production of an alleged incident which took place, not with him, but with another inmate named "Justy" on or about September 3, 2019. Mr. Landreth explained in his affidavit there would not be a recording of this alleged incident, not even involving Plaintiff, as it was not an event that would have been "recorded off, and took place too long before the Complaint in this matter was served." (ECF No. 24, p. 4-5). Landreth also explained that staff at his direction checked for video from September 3, 2019 (event involving another inmate) and October 2, 2019 (the date of Plaintiff's placement in lockdown) on two separate occasions and did not locate any such videos. *Id.*

Defendants represent to the Court Plaintiff has never submitted a request to them for copies of ten sections of the Policy and Procedure Manual or information about the procedure on PREA until he filed the instant motion on March 12, 2020. (ECF No. 24, p. 6).

## **APPLICABLE LAW**

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which provides in part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) The discovery sought is unreasonable, cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) The proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Further, under rule 26(c), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

The burden is generally on the party resisting discovery to show why discovery should be limited. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010). In carrying this burden, the objecting party cannot rely on mere statements and conclusions but must specifically show how the objected-to disclosures would be irrelevant or

overly burdensome, overly broad, or oppressive. *See St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (collecting cases). In the Eighth Circuit, a court may sanction a party only where there is an order compelling discovery, willful violation of that order, and prejudice to the opposing party. *Keefer v. Provident Life & Accident Ins. Co.,* 238 F.3d 937, 940 (8th Cir. 2000).

## DISCUSSION

Plaintiff's motion must be denied for several reasons. First, although Federal Rule of Civil Procedure 37(a) allows a party to file a motion to compel a party to produce discovery, the party filing the motion must include a certification that he has in good faith conferred or attempted to confer with the person or party failing to make a disclosure or discovery in an effort to obtain it without court action. *Id.* Although there appears to have been correspondence between Plaintiff and Defendants, the record reflects defense counsel responded to Plaintiff and then heard nothing back from Plaintiff as to whether he agreed or disagreed with Defendants' response. In addition, Plaintiff's motion did not contain any language stating he had conferred with Defendants prior to filing the motion.

Second, the record reflects Plaintiff is requesting a copy of a grievance Defendants' have already produced. The Court is convinced there was no "nefarious behavior" or bad faith on the part of Defendants to hide one grievance, or any other material, from Plaintiff which would warrant any sanctions against them. Not only is there not an order from this Court compelling Defendants to produce discovery, within days after Plaintiff pointed out to Defendants they had failed to produce grievance number 5,121,898, Defendants produced the document to Plaintiff. At this early stage of the litigation, Plaintiff has not been prejudiced by any delay in production of this grievance.

Third, the Court finds Defendants have informed Plaintiff that no audio or video of Plaintiff on August 9, 2019 or another inmate on September 3, 2019 exists. The Court notes Rule 34 provides for production of documents and things within "the responding party's possession, custody or control." Fed. R. Civ. P. 34 (a)(1). Defendants cannot produce what they do not have in their possession or control. Further, Defendants cannot produce what does not exist.

Fourth, Plaintiff asks this Court to compel the production of copies of specific polices and PREA materials he has not previously requested from Defendants. As Plaintiff was instructed by this Court once before, he is required to first submit his request for production to Defendants, give them thirty (30) days to respond, and then confer in an attempt to resolve a dispute prior to filing a motion with the Court.

Accordingly, Plaintiff's Motion for Immediate Judgment (ECF No. 23) is **DENIED.**

**IT IS SO ORDERED** this **25th day of March 2020.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE