IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RYAN CERNOSEK                                                                                    PLAINTIFF

v.                                          Civil No. 4:19-cv-04132

SERGEANT B. GRIFFIE                                                                          DEFENDANT

### MEMORANDUM OPINION

This is a civil rights action filed *pro* se by Plaintiff, Ryan Cernosek, under 42 U.S.C. § 1983. On December 12, 2019, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Before the Court are two Motions for Summary Judgment filed by Defendant Sergeant B. Griffie. (ECF Nos. 44, 46). Plaintiff filed Responses to each motion (ECF Nos. 52, 53) and Defendant filed a Reply to each Response. (ECF Nos. 54, 55). The Court finds these matters ripe for consideration.

### I. BACKROUND

Plaintiff is no longer incarcerated and currently resides in De Berry, Texas. His claims in this action arise from alleged incidents that occurred in October of 2019, while he was incarcerated in the Miller County Detention Center ("MCDC") as a pre-trial detainee. (ECF No. 1, p. 3).

On October 2, 2019, Plaintiff filed Request No. 5,121,898 stating, "I am needing to know Captain Adams first name, as well as the warden's full name. I am also needing a certified copy of my prisoner account statement for the past 6 months. These items are required for my 1983 complaint which I am filing. Please and thank you." (ECF No. 48-2, p. 1). Defendant Griffie responded to the request stating, "THREATENING TO SUE IS A DIRECT VIOLATION OF THE RULES HERE AT MILLER COUNTY AND YOU WILL BE ROLLED UP FOR YOUR

1

ACTIONS". *Id.*

According to the affidavit of Defendant Griffie, being rolled up is a common phrase used in jails regarding being placed in isolation or a segregation pod. (ECF No. 51, p. 2). Defendant Griffie also states in his affidavit, "I misread the Plaintiff's request. In previous administrations, we were told that a threat of any kind could lead to a possible disciplinary. I realize now that the request filed by the Plaintiff was not a threat and the Plaintiff was just asking for names." *Id.* at p. 1. Because of Defendant Griffie's response to Plaintiff's request, he received a verbal reprimand from his superiors at the MCDC. *Id.*

Plaintiff was not placed in isolation or a segregation pod for filing Request No. 5,121,898. (ECF No. 48-5, p. 28). In addition, Plaintiff continued to file numerous requests at the MCDC after he received Defendant Griffie's response this request October 2, 2019,[1] and he filed his Complaint in this lawsuit on October 11, 2019. (ECF No. 1).

**a. Plaintiff's Complaint**

Plaintiff originally named Warden J. Walker, Captain G. Adams, and Sergeant B. Griffie as Defendants in the Complaint. (ECF No. 1). He describes his individual capacity claims against the Defendants as "threat of solitary confinement and fear of PREA[2] action caused by Guard on 10/2/19 @ 10:39 am." (ECF No. 1, p. 4.) Plaintiff specifically alleges:

---

[1] Plaintiff filed the following requests after receiving Defendant Griffie's response on October 2, 2019: Request #5,207,000 on October 16, 2019 requesting a certified copy of his inmate account and assets (ECF No. 48-2, p. 47); Request #5,220, 960 on October 18, 2019 grievance regarding coffee stolen from Plaintiff (*Id.* at p. 48); Request #5,221,337 on October 18, 2019 grievance regarding stolen coffee (*Id.* at p. 49); Request # 5,209,252 on October 16, 2019 regarding inmate account (*Id.* at p.69); Request #5,222,623 on October 18, 2019 grievance on stolen coffee (*Id.* at p. 70); Medical Request #5,128,747 on October 3, 2019 regarding his physician at UAMS (*Id.* at p. 103); Medical Request #5,163,167 on October 9, 2019 regarding his physician at UAMS regarding Plaintiff's brain tumor (*Id.* at p. 104); Medical Request #5,190,165 regarding his next court date and additional medication Plaintiff may need (*Id.* at p. 105); Medical Request #5,223,539 on October 19, 2019 regarding another inmate's behavior and self-mutilation (*Id.* at p. 106); Medical Request #5,239,533 following up regarding another inmate's self-mutilation (*Id.* at p. 107).
[2] PREA stands for Prison Rape Elimination Act.

2

> I personally asked C.O. Golden if we could go outside for our scheduled Recreation Time. He said no, that it was too hot even though it was 82 degrees outside. Because this has been a continued problem (the lack of Recreation Time because the guards are too lazy to take us outside), I had decided to file a 1983 complaint. This, however, is not the basis of this claim (there is much more)…

*Id.* at p. 4.[3]

Plaintiff goes on to describe the request he submitted on October 2, 2019 for information he needed in connection with the lawsuit he intended to file and the response he received from Defendant Griffie. In addition he states, "…after receiving this message [from Defendant Griffie] on the kiosk , C.O. golden arrived at our POD and rolled me up. I was taken, with all of my belongings, to R & D and was confronted by Sgt. B. Griffie…I am being faced with the Sgt. and am facing going to the hole where I will be placed in solitary confinement. What makes this even scarier is what happed to a fellow inmate…" *Id.* at p. 6. Plaintiff goes on to state:

> On or about 9/3/19…a fellow inmate name Justy Pess, was rolled up in our POD by Sgt B. Griffie for not obeying a direct order to move back to his assigned rack. During the altercation Sgt. B. Griffie made the comment that 'He had a really good place for Justy in MAX lockup with Henderson.' And as he is saying this, he is making a derogatory hand motion with his fist busting through his other hand signifying that Henderson would do something anally sexual to Justy once he was rolled up and locked down. I, along with a number of other inmates…saw this hand motion & statement from Sgt. Griffie…I, on my own, filed a request for a PREA hotline and was called to the office in R & D. by Cpl. Smith and Cpl. Walker about it. But once both found out it was concerning an officer, they both said they would get me a number to call but never did. I feel that they would have done more if it had been an inmate & not a fellow guard that committed the offense.
>
> I feel that the basis for my claim revolves around two joint factors, and both violate my constitutional rights. By rolling me up and threatening me to be placed in solitary confinement for exercising my right to file a claim, and to have it done by an officer who no more than a month earlier made PREA statements concerning another inmate going to lockdown violated my safety, my life and my constitutional rights.

---

[3] Plaintiff has not named C.O. Golden as a Defendant in this lawsuit.

3

(ECF No. 1, pp. 7-8).

Plaintiff describes his official capacity claim as follows: "…the chain of command between Warden – Captain – Sgt. and the policy of the jail to 'roll up' people who express their constitutional right to file a 1983 form is a violation. It is apparent that this is a policy of the Jail due to the fact that Sgt. Griffie firmly stated that it was the policy of the jail." (ECF No. 1, p. 9).

Plaintiff is seeking compensatory and punitive damages. *Id.* at p. 10.[4] On June 4, 2020, Plaintiff dismissed his claims against Defendants Walker and Adams leaving only the claims against Defendant Griffie. (ECF Nos. 36, 37).

### b. Plaintiff's Deposition Testimony

On May 15, 2020, Plaintiff gave his sworn testimony during a deposition. (ECF No. 48-5). Plaintiff admits he did not receive a disciplinary nor was he placed in isolation because of the request he filed on October 2, 2019 relating to information he needed to file a 1983 lawsuit. *Id.* at p. 28. Plaintiff specifically testified,

> I wouldn't say disciplinary action per se, but I definitely was treated differently the guards…they would look at me differently. They would – they weren't as cordial. They were very standoffish. They were very inadvertent with their remarks towards me. I was never – I was never physically assaulted or verbally assaulted, but it was just a different feeling from them after I filed this after the 2nd of – of October.

*Id.* at p. 29.

Plaintiff also testified he is only making a claim for emotional injury and suffered no physical injury from the alleged actions taken by Defendant Griffie. (ECF No. 48-5, p. 50).

---

[4] On October 28, 2019, Plaintiff filed a Supplement to his Complaint increasing the amount of damages from $100,00.00 to $2,000,000.00 stating in part, "I feel this increase is necessary due to my continued health issues, lack of sleep, continued fear everytime a guard enters our POD and lack of disciplinary control…" (ECF No. 7).

In addition, Plaintiff testified he is not challenging any policy of Miller County. (ECF No. 48-5, p. 66). Instead, Plaintiff stated, "Well, if you look at the PREA information, it states that PREA is there for the detection, prevent, reduction, and punishment of prison rape. I believe that by Griffie doing what he did was not in complaint with that. It didn't prevent or reduce rape in prisons." *Id.*

Plaintiff also testified his claim relating to not being able to go outside in August of 2019 is that he did not think it was too hot, despite being told it was too hot by the deputies. (ECF No. 48-5, 10).

### c. Motion for Summary Judgment - Official Capacity Claims

On September 18, 2020, Defendant Griffie filed two separate summary judgment motions. The first one addresses Plaintiff's official capacity claims against Miller County. (ECF No. 44). Defendant Griffie argues he is entitled to summary judgment on the official capacity claims because 1) Plaintiff admitted in his deposition he is not challenging any policy of Miller County; and 2) Plaintiff's claim regarding lack of outside recreation does not rise to the level of a constitutional violation. (ECF Nos. 44, 45).

On October 8, 2020, Plaintiff filed a Response to the motion stating in part:

> It is incorrect that this original claim and 1983 lawsuit was filed by the plaintiff due to a lack of recreation time while he was an inmate. The reason the lawsuit was filed was due to the egregious, harmful and vindictive way in which Sgt. Griffie performed his duties while being on the job as a detention officer at Miller County Detention Center…Although the Plaintiff is not directly alleging the involvement of the county or policies of the county, it is stating beyond a shadow of a doubt that Mr. Griffie was trained by the county, was employed by the county for over 10 years and was even reprimanded by the county for this very incident. Furthermore, there is a direct, affirmative link between Sgt. Griffie's violation and the policy with which he broke. It is called the PREA Act that Mr. Griffie was aware of and was trained on, by the county. It is their policy and he violated it…Finally, a lack of outside time being considered for a cognizable claim against the defendant is redundant and without form. Once again, the Plaintiff has established through a

5

>number of different means that the original complaint was based solely on Sgt. Griffie's behavior on 9/3/19 (with Justy Bess) and then again on 10/2/19 (with the Plaintiff, Ryan Cernosek).

(ECF No. 52, pp. 1-2).

On October 14, 2020, Defendant Griffie filed a Reply to Plaintiff's Response stating, "Plaintiff has essentially admitted that there is no claim for recreation time… and that it is simply his complaint that Griffie did not follow the policies that the County required Griffe to follow." (ECF No. 54).

### d. Motion for Summary Judgment - Individual Capacity Claims

The second summary judgment motion addresses the individual capacity claims against Defendant Griffie for retaliation and verbal threats. (ECF No. 46). Defendant Griffie argues he is entitled to summary judgment because: 1) Plaintiff was not denied reasonable access to the courts and legal system; 2) verbal threats do not constitute a constitutional violation; 3) there is no constitutional right to a grievance procedure; 4) there was no actual physical injury to Plaintiff under the PLRA; and 5) Defendant Griffie is entitled to qualified immunity. (ECF No. 46).

On October 8, 2020, Plaintiff filed a Response stating in part:

>…Plaintiff has shown 'substantiate allegations with sufficient evidence that would permit a finding in its favor based on more than mere speculation conjecture, or fantasy.'….Sgt. Griffie admits to being reprimanded and having disciplinary charges against him in his very own deposition (See Document 48-1 Page 17 of 30). Why exactly would Mr. Griffie be subject to disciplinary actions if he did nothing wrong?...

>…Plaintiff is not bringing this claim as a First Amendment Issue, but one based on Mr. Griffie's callous and unrefined behavior towards Mr Cernosek and thus, caused Mr. Cernosek emotionally problems, psychological problems, sleep deprevation and malnutrition. Yes, verbal harassment is not a constitutional violation, but it is in fact a violation to threaten someone or coerce them into action by the basis of being annally raped by another inmate, which Sgt. Griffie most assuredly did previously to Mr. Justy Bess and then again to the Plaintiff in R&D on the morning of October 2nd, 2019…what Sgt. Griffie did to both inmate Justy Bess and the

6

> plaintiff, Ryan Cernosek, was heinous and wrong. Because of this, the Plaintiff seeks both compensatory and punitive damages to be issued in regards to this case…and Mr. Cernosek has had physical injuries, most notably a lack of sleep, nightmares, an increase in anxiety and inability to eat for months following this altercation…

(ECF No. 53).

On October 15, 2020, Defendant Griffie filed a Reply to Plaintiff's Response. (ECF No. 55). He argues, "Plaintiff's allegations, at most, are that Defendant's behavior was 'callous and unrefined', but does not allege that the Defendant did anything other than respond to a grievance and allegedly confront him verbally on October 2, 2019." *Id.* He goes on to state, "the Plaintiff continued filing grievances throughout his incarceration and filed this lawsuit less than a week after [Defendant Griffie's] grievance response." *Id.* at p. 1. In addition, Defendant points out Plaintiff's claim in his Response that he suffered physical injuries is in direct contradiction of his testimony during his deposition that he was not making a claim for physical injury and his claim was solely for emotional and mental injuries. *Id.* at p. 2.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing*, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege each Defendant acted under color of state law and that he or she violated a right secured by the constitution. *West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F.3d 1007, 1009 (8th Cir. 1999).

### III. DISCUSSION

**a. Verbal Threats**

Plaintiff alleges Defendant Griffie violated his constitutional rights on September 3, 2019, when Plaintiff overheard him say to another inmate that he "had a really good place for Justin in MAX lockup with Henderson" and made obscene gestures indicating an anal sexual act. (ECF No. 1, pp. 7-8). Plaintiff alleges this incident caused him to fear for his safety and therefore violated his rights on October 2, 2019, when Defendant Griffie threatened to place him in solitary confinement. *Id.*

The law is clear, "verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation).

Accordingly, Defendant Griffie is entitled to summary judgment on Plaintiff's claim relating to the verbal threats made by Defendant Griffie.

### b. Retaliation

Plaintiff alleges Defendant Griffie retaliated against him on October 2, 2019, when he responded to a request by Plaintiff for information concerning the filing of a 1983 lawsuit and wrote, "THREATENING TO SUE IS A DIRECT VIOLATION OF THE RULES HERE AT MILLER COUNTY AND YOU WILL BE ROLLED UP FOR YOUR ACTIONS." (ECF No. 48-2, p. 1).

Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected

action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

There is no question Plaintiff engaged in protected First Amendment activity when he filed his request for information needed to file this lawsuit. It is also clear Defendant Griffie's response was motivated by Plaintiff's exercise of that protected action. *See Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007). However, the Court does not find the written response by Defendant Griffie, especially under the circumstances of this case, would "chill a person of ordinary firmness" from continuing in the activity.

First, Plaintiff was never disciplined or placed in solitary confinement after he submitted his request for information for his lawsuit. Second, Defendant Griffie received a verbal reprimand from his superiors at the MCDC for responding in the manner he did to Plaintiff's request. In addition, the summary judgment record establishes Plaintiff filed this lawsuit on October 11, 2020 – just nine days after Defendant Griffie responded to Plaintiff's request - and continued to file numerous requests and grievances in the days and weeks following Defendant Griffie's response. There is no question Defendant's written response did not discourage or "chill" Plaintiff from continuing to file requests and grievances.

Accordingly, Defendant Griffie is entitled to summary judgment on Plaintiff's claim of retaliation.

**c. Denial of Outside Recreation Time**

In the Complaint Plaintiff mentions an incident when he and others were denied the opportunity to go outside for recreation time at the MCDC. He identifies only one individual – Officer Golden – as the person who refused to allow him to go outside on one occasion because it was too hot. However, Plaintiff has not named Mr. Golden as a defendant. Plaintiff also states,

"because this has been a continued problem (the lack of Recreation Time because the guards are too lazy to take us outside), I had decided to file a 1983 complaint. This, however, is not the basis of the claim…" ECF No. 1, pp. 4-5).

It is not clear to the Court whether Plaintiff intended to assert a claim based on denial of outside recreation in the Complaint and Plaintiff seems to abandon any claim he may have made in his Response to the summary judgment motions. (ECF No. 52, pp. 1). Even so, the Court will address the issue.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health

11

or safety." *Revels,* 382 F.3d at 875. However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

A constitutional violation exists if Defendant Griffie, the only named defendant, was deliberately indifferent to Plaintiff's exercise needs. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Factors the Court should consider in reviewing an inmate's lack of exercise claim are: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id.* Lastly, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis. Irving v.* Dormire, 519 F.3d 441, 448 (8th Cir. 2008). "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation. *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994).

As previously stated, a plaintiff must allege that each defendant acted under of color of state law, and that he or she violated a right secured by the constitution to state a claim under § 1983. *Dunham,* 195 F.3d at 1009. Plaintiff has not made any specific allegations in the Complaint that Defendant Griffie denied him outside recreation. Accordingly, Defendant Griffie is entitled to summary judgment on this claim.[5]

**d. Official Capacity Claims**

Plaintiff also sued Defendant Griffie in his official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels*

---

[5] Even if Plaintiff had made specific allegations against Defendant Griffie regarding denial of outside recreation the Court is convinced his claim would still fail. The Eighth Circuit has held that no outside recreation for three months is insufficient to demonstrate deliberate indifference to an inmate's health. *See Thompson v. Stovall*, 2013 WL 501437, at *6 (W.D. Ark. Jan. 18, 2013) (citing *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (inmate denied outside recreation for three months failed to establish deliberate indifference to his health)).

*Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendant Griffie are treated as claims against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. Although Plaintiff argues his rights were violated by Defendant Griffie when he violated the MCDC's policies when he threatened to place Plaintiff in solitary confinement for stating he was filing a lawsuit and when he allegedly made statements violating the PREA, the law is clear that "an internal jail policy or procedure does not create a constitutional right, nor does a correctional officer's failure to follow such regulation rise to the level of a § 1983 claim." *Brown v. Boone Cnty.*, No. 5:13-cv-03065-TLB, 2014 WL 4405433, at *5 (W.D. Ark. Sept. 5, 2014) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Accordingly, Plaintiff's claims against Defendant Griffie in his official capacity fail as a matter of law and he is entitled to summary judgment on those claims.[6]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motions for Summary Judgment (ECF Nos. 44 and 46) are **GRANTED.** Plaintiff's claims against Defendant Sergeant B. Griffie are **DISMISSED WITH PREJUDICE.** A judgment of even date shall issue.

**IT IS SO ORDERED,** this 14th day of December 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[6] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.